# Morrison v. McDavid.

(Decided February 8, 1927.)

(Rehearing Denied March 23, 1928.)

## Appeal from Carter Circuit Court.

1. Pleading.—Averments of petition are admitted to be true by demurrer interposed thereto.
2. Contracts.—Where particular word or words or contract as a whole is susceptible of two meanings, one of which will uphold contract and render it valid and other destroy it and render it invalid, former will be adopted so as to uphold contract.
3. Contracts.—Contract when susceptible of two constructions, one of which would work a forfeiture, and the other not, construction should be adopted to prevent forfeiture and preserve rights of parties.
4. Partnership.—Partnership contract containing agreement to keep public from knowing that one of partners was a member of firm held not in violation of Ky. Stats., sec. 199b, so as to render it void, when interpreted as meaning that it was neither the intention nor agreement of parties to refuse or decline to comply with provisions of such section, but only for agreement not to mention fact in usual and ordinary manner of doing so.

WAUGH & HOWERTON for appellant.

JOHN M. THEOBALD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On January 10, 1924, W. H. Morrison entered into a contract of copartnership with J. L. McDavid, whereby they agreed to conduct a mercantile business in Hitchens, under the name of People's Cash Store. Morrison was to furnish $2,000, and McDavid $1,000. McDavid was to operate the store and receive $75 per month salary. Morrison was to receive two-thirds of the profits from the business, and McDavid one-third. The contract was for one year, but was to remain in force so long as the business proved a success. It was provided, however, that by mutual agreement the business might be transferred or dissolved in some satisfactory way to both parties on three months' notice by either party after the business had been running for one year. The contract also contained the following provision: "It is agreed to keep the public from knowing the first party is a member of the firm."

This suit was brought by Morrison against McDavid and Jake Burton for a settlement of the partnership and the appointment of a receiver. In addition to setting out the contract, the allegations of the petition are, in substance, as follows: The parties to the contract began the business in the month of February, 1924, and continued to run and operate it until November 21, 1925. On that day plaintiff and defendant McDavid orally agreed to sell the business and stock of goods to the defendant Jake Burton, who agreed to buy the business and stock of goods at the invoice price. It was also agreed between plaintiff and defendant McDavid that they would pay the partnership indebtedness. Pursuant to that agreement, Burton immediately began to invoice the goods to ascertain the value thereof. Before the inventory was completed, the defendants, McDavid and Burton, took charge of the books, accounts, and all the property and assets of the firm, and refused to complete the inventory, or to ascertain how much Burton should pay for the merchandise and stock of goods. Burton was then placed in charge of the goods, and is now running and operating the business. He and McDavid have excluded plaintiff from the management and conduct of the business, and plaintiff has not been paid anything for his interest in the partnership or for the sale price of his interest in the store. It is impossible for the plaintiff and McDavid mutually to dissolve the partnership, and plaintiff has requested McDavid to adjust the matter, finish the inventory, ascertain what the sale price is in order that the firm indebtedness may be paid, but he refused to do so. The stock of goods is worth between $5,000 and $6,000, and the debts of the firm amount to about $1,600. There is imminent danger of the firm property being seized by the creditors, and the sale under such process would bring about a sacrifice of the property and cause irreparable injury to the plaintiff and the creditors of the firm. Plaintiff is entitled to a dissolution, but, as he and the defendant McDavid cannot agree upon a method of dissolution, it is necessary, for the protection of all parties in interest, that a receiver be appointed to take charge of the firm property and to dispose of same under the orders of the court. The defendant McDavid has not in good faith sold the partnership property to the defendant Burton, but he and defendant Burton intend to operate the store as a partnership, and have fallen upon a secret and fraudulent plan and scheme to oust the

plaintiff from the ownership and conduct of the store. A demurrer was sustained to the petition, and it was dismissed. Plaintiff has appealed.

The demurrer to the petition was sustained upon the ground that the above-inserted sentence from the partnership contract was an agreement between the two contemplated partners to violate the provisions of section 199b of our Statutes, and, being so, it was void and had the effect to vitiate all of the express and implied obligations between the partners that existed or might arise throughout the continuance of the partnership. If the alleged vitiating sentence of the partnership contract was sufficiently clear and explicit in its terms to undoubtedly express an intention on the part of the future partners to disobey and violate the provisions of the section supra, of the statute, then two other questions would arise: (a) Whether the principles announced in the recent case of Hayes v. Providence Citizens' Bank & Trust Co., 218 Ky. 128, 290 S. W. 1028, would apply in actions between the partners concerning the partnership property so as not to deprive any partner from maintaining them; and (b), whether the invalid agreement would only affect the right to enforce *its* observance, or whether it would vitiate the entire contract so as to render all of its obligations void and unenforceable? For the reasons stated below, we have concluded to not determine either of those questions.

If the averments of the petition are true, and which are admitted to be so by the demurrer, a most glaring outrage is attempted to be perpetrated on plaintiff by defendants. The consequences of an interpretation rendering the contract entirely void so as to defeat plaintiff's cause of action would be highly penal in its nature. The text in 13 C. J. 539, sec. 506, says:

> "Where a particular word or words, or the contract as a whole, is susceptible of two meanings, one of which will uphold the contract or render it valid, and the other of which will destroy it or render it invalid, the former will be adopted so as to uphold the contract."

Cases from the Supreme Court of the United States and from the highest appellate court in thirty of the different states, as well as cases from the English courts, are cited in support of that text, including those of Louisville First National Bank v. Doherty, 156 Ky. 386, 161

S. W. 211, and Berry v. Frisbie, 120 Ky. 337, 86 S. W. 558, 27 Ky. Law'Rep. 724, and that rule for the construction of contracts is of universal application, and no court so far as we are advised rejects it. See, also, Pennsylvania Fire Ins. Co. v. Cullin, 202 Ky. 107, 258 S. W. 965.

The next section on the same page of the cited volume says:

> "So where one construction will make the contract legal and another will make it contrary to law or public policy, the former construction will be adopted, if reasonable."

Among the numerous cases cited in support of that text are those of Bibb v. Miller, 11 Bush 306, and Henderson Belt Railroad Co. v. Dechamp, 14 Ky. Law Rep. 44. On page 541 of the same volume, section 512, another well-established principle governing the construction of contracts is thus stated:

> "Where a contract is susceptible of two constructions, one of which will work a forfeiture and the other will not, that construction should be adopted which will prevent the forfeiture and preserve the right of the parties, and the ordinary meaning of words employed in a contract will not be extended for the purpose of supporting a forfeiture."

The principles embodied in the foregoing excerpts are fundamental ones and known to all members of the profession. They could be substantiated by references to other standard authors and text-writers as well as by judicial opinions, but they are so well understood that it is not necessary to do so. As stated, the interpretation of the alleged vitiating sentence of the contract contended for by defendant is highly penal in its nature, and its resulting consequences are very analogous and much akin to a forfeiture, and for that reason the rule of construction applicable to forfeitures should also be applied here. The clause of the contract in question might be interpreted to be an agreement on the part of the contemplated partners to ignore the provisions of section 199b of the Statutes, but it is also susceptible to the interpretation that the usual and ordinary methods of imparting information to the public concerning the personnel of the partnership were not to be adopted in the conduct of the business; i. e., on letterheads, billheads,

advertisements, signs over the place of business, conversations, and other methods usually employed to convey to the public such information. In order to render the entire contract invalid under the principles of law, supra, it should clearly appear that it was the specific intention, as well as the positive agreement or understanding between the parties, to violate the law with reference to the matter covered by the vitiating language. When that is found to be true, then the consequence of closing the door of the court to the litigant followed by a forfeiture of his rights results; but, unless it clearly appears that such interpretation is the only one to which the objectionable language is susceptible, no such consequences will be decreed.

Our interpretation of the language of the contract here involved is that it was the purpose of the parties employing it to not mention in the usual and ordinary manner of doing so the fact of one of the partners being a member of the firm, and that it was neither their intention nor their agreement to refuse or decline to comply with the provisions of the section, supra, of the Statutes, which only furnishes a record by which the members of the public might be informed as to who constituted the partnership, but which, as is generally known, is but rarely if ever consulted for that purpose.

We, therefore, conclude that the court erred in sustaining the demurrer filed to the petition, and the judgment is reversed and remanded for proceedings consistent herewith.

Whole court sitting.